UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| GORDON LAURIA and MARCOS PAPPAS, | : : | | |
| Petitioners, | : : | | |
| v. | : : | Case Nos.: | 3:96cr185 (PCD) 3:01cv1893 (PCD) |
| UNITED STATES OF AMERICA, Respondent. | : : | | 3:01cv1894 (PCD) |

## RULING ON MOTIONS FOR RECONSIDERATION

On December 13, 2006, this Court issued a Ruling [Doc. No. 411] which, *inter alia*, granted in part and denied in part Petitioner Gordon Lauria's *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 317] and denied Petitioner Marcos Pappas' *pro se* § 2255 motion [Doc. No. 318]. On December 20, 2006, the Government moved for reconsideration of the December 13, 2006 Ruling insofar as it granted in part Lauria's § 2255 motion. Subsequently, on January 8, 2007, Petitioners moved for reconsideration of the December 13, 2006 Ruling insofar as it denied in part Lauria's § 2255 motion and denied Pappas' § 2255 motion. For the reasons that follow, the Government's Motion for Reconsideration [Doc. No. 412] is **granted** and Petitioners' Motion for Reconsideration [Doc. No. 414] is **denied**.

## I. BACKGROUND

The facts in this case are set forth in detail in this Court's Ruling on Petitioners' § 2255 motions, familiarity with which is assumed. See Lauria v. United States, Nos. 3:96cr185 (PCD), 3:01cv1893 (PCD), 3:01cv1894 (PCD), 2006 U.S. Dist. LEXIS 90010, at *2-7 (D. Conn. Dec. 13, 2006). For that reason, only those facts necessary to the resolution of this motion will be laid

out here.

Defendant-Petitioner Gordon Lauria ("Lauria"), Defendant-Petitioner Marcos Pappas ("Pappas"), and Albert Bellucci ("Bellucci") were arrested by members of the New Haven Drug Task Force at Nancy's Café (a tavern in New Haven) on September 24, 1996 pursuant to a federal criminal complaint charging the three men with witness tampering in violation of 18 U.S.C. § 1512(b).

On April 3, 1997, a separate federal grand jury returned a four-count superseding indictment against Lauria, Pappas and Alexander Rogers ("Rogers"). Count One charged Lauria, Pappas and Rogers with conspiracy to possess with the intent to distribute and to distribute an unspecified amount of cocaine, in violation of 21 U.S.C. § 846. Counts Two and Three charged Lauria and Pappas with conspiring to retaliate against a witness, in violation of 18 U.S.C. § 371, and with retaliation against a witness, in violation of 18 U.S.C. § 1513(b)(2). Count Four charged Lauria alone with retaliation against a witness. Bellucci was not charged in the superseding indictment. Prior to trial, the Government filed a Notice pursuant to 21 U.S.C. § 851 that in the event of conviction, Lauria would be subject to the enhanced penalties provided for in 21 U.S.C. § 841.

A jury was selected on June 3, 1997, and the jury trial of Lauria, Pappas and Rogers began on July 21, 1997. On July 29, 1997, the jury found the defendants guilty on all counts.

On March 31, 1998, Lauria was sentenced to a total effective sentence of 420 months (or 35 years) imprisonment and a $25,000 fine. He was sentenced to 420 months (or 35 years) imprisonment, followed by 10 years of supervision and a $25,000 fine on Count One; 60 months (or 5 years) imprisonment on Count Two; 120 months (or 10 years) imprisonment on Count

Three; and 120 months (or 10 years imprisonment) on Count Four. The sentences on Counts Two, Three, and Four were to run concurrently with one another, and concurrent with the sentence imposed on Count One.

On April 2, 1998, Pappas was sentenced to a total effective sentence of 360 months (or 30 years) imprisonment. He was sentenced to 360 months (or 30 years) imprisonment on Count One; 60 months (or 5 years) imprisonment on Count Two; and 120 months (or 10 years) imprisonment on Count Three. The sentences on all three counts were to run concurrently with one another.

Both defendants filed a timely notice of appeal. The Second Circuit rejected Petitioners' arguments, affirming their convictions. See United States v. Pappas, No. 98-1206, 1999 U.S. App. LEXIS 26500, 1999 WL 980957 (2d Cir. Oct. 19, 1999); United States v. Lauria, No. 98-1214, 1999 U.S. App. LEXIS 26501, 1999 WL 1012819 (2d Cir. Oct. 19, 1999).

## II.  STANDARD OF REVIEW

Reconsideration will generally only be granted when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted) (cautioning that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). Reconsideration should therefore be granted when a "party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). This Court will not grant a motion to reconsider "where the moving

3

party seeks solely to relitigate an issue already decided," to "plug gaps in an original argument or to argue in the alternative once a decision has been made." Id.; Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (citations omitted). The standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court. Shrader, 70 F.3d at 257. Ultimately, however, the question is a discretionary one and the court is not limited in its ability to reconsider its own decisions prior to final judgment. See Virgin Atl., 956 F.2d at 1255.

Where, as here, a plaintiff is proceeding *pro se*, this Court "read[s] his papers liberally, interpreting them 'to raise the strongest arguments that they suggest.'" Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)).

## III.  DISCUSSION

### A.  Government's Motion for Reconsideration

In the December 13, 2006 Ruling, this Court granted in part Lauria's § 2255 motion, finding that he should be re-sentenced on the ground that his 420-month sentence was imposed in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), based on the omission of drug quantity from the indictment.[1] In its Motion for Reconsideration, the Government argues that this Court erroneously concluded that the Apprendi error requires

---

[1] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Following Apprendi, in prosecutions involving a drug charge, "the quantity of drugs must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt." Coleman v. United States, 329 F.3d 77, 83 (2d Cir.), cert. denied, 540 U.S. 1061, 124 S. Ct. 840, 157 L. Ed. 2d 719 (2003). The Second Circuit has applied this rule to determinations of drug type and quantity under 21 U.S.C. § 841, but only to the extent that those determinations lead to the imposition of a sentence greater than the otherwise applicable statutory maximum. See United States v. Thomas, 274 F.3d 655, 663-64 (2d Cir. 2001).

4

reversal under the "plain error" analysis. (See Gov't Mot. Recons. 2-4.) Alternatively, the Government argues that even if the omission of drug quantity from the indictment constituted error, such error was harmless because Petitioner was convicted of multiple offenses and the sentences on those counts could and should be run consecutively to achieve the aggregate sentence of 420 months. (See id. at 2, 4-8.)

The Supreme Court has ruled that Federal Rule of Civil Procedure 52(b)'s plain error analysis applies to the unobjected-to omission from an indictment of a fact that enhances a sentence above a statutory maximum. United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002); see also United States v. Thomas, 274 F.3d 655, 666 (2d Cir. 2001) (en banc). Under that test, before a court can correct an error not raised at trial, the court must find: (1) error, (2) that is plain, and (3) that affects substantial rights. Cotton, 535 U.S. at 631 (quoting Johnson v. United States, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). Under the Second Circuit's "modified plain-error rule," applied where, as here, "the source of plain error is a supervening decision," the Government—rather than the defendant—bears the burden of establishing that the error did not affect substantial rights, or that the error was harmless. United States v. Outen, 286 F.3d 622, 639 (2d Cir. 2002) (citing United States v. Monteleone, 257 F.3d 210, 233 (2d Cir. 2001)).[2] If all three of these conditions are met, the court may, in its discretion, notice the error, but only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Cotton, 535 U.S. at 631-32

---

[2] In Outen, 286 F.3d at 640 n.18, the Second Circuit assumed, without actually deciding, that the modified plain-error rule remains good law after Johnson v. United States, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed. 2d 1544 (1997). The Government does not argue the point here, and accordingly, it is assumed that the Second Circuit's modified plain-error rule remains good law.

(quoting Johnson, 520 U.S. at 467).

In this case, the superseding indictment alleged that Petitioners conspired to possess with the intent to distribute and to distribute an unspecified amount of cocaine, in violation of 21 U.S.C. § 846, and the jury found that they had, in fact, conspired to do those acts. The jury was not asked to consider the quantity of the drugs involved. Following trial, Lauria was sentenced to 420 months, or thirty-five years, imprisonment on Count One of the indictment, which exceeds the statutory maximum of thirty years prescribed by 21 U.S.C. § 841(b)(1)(C)—the provision applicable to a crime involving an unspecified quantity—where, as here, a prior conviction for a felony drug offense has become final and a Section 851 Notice has been filed.[3] Lauria's 35-year sentence was based on this Court's finding, by a preponderance of the evidence, that Lauria's crime involved 500 or more grams of cocaine.[4]

It is clear here that the failure to allege a fact, i.e., drug quantity, that enhances the statutory maximum sentence constitutes "error" under Apprendi, and that the error is "plain." See Cotton, 535 U.S. at 632. Assuming that the error affected Petitioner's substantial rights, the Court turns to the question of whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."

---

[3] 21 U.S.C. § 851(a)(1) provides, in pertinent part, that: "No person who stands convicted of an offense under this part [21 USCS §§ 841 et seq.] shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

[4] 21 U.S.C. § 841(b)(1)(B) provides that if a person is found to have committed a violation of § 841(a) that involved 500 grams or more of cocaine or 5 grams or more of cocaine base, that person "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B). Moreover, if a Section 851 Notice was filed, as here, "such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment." Id.

In Cotton, the Supreme Court applied plain error analysis to an Apprendi error and found that an unobjected-to Apprendi error in omitting drug quantity from an indictment need not result in resentencing when proof of the quantity was overwhelming. 535 U.S. at 632-64. Specifically, the Court held that where the evidence of drug quantity adduced at trial is "overwhelming" and "essentially uncontroverted," it does not seriously affect the fairness, integrity or public reputation of judicial proceedings when a defendant is sentenced based on that amount. Id. In that case, as here, drug quantity was not charged in the indictment and the defendants did not object to its omission at trial. During trial in Cotton, the "evidence implicating [the defendants] in the drug conspiracy revealed the conspiracy's involvement with far more than 50 grams of cocaine base;" the evidence produced included 380 grams of cocaine base seized during the investigation. Id. at 633. As a result, the Court found that "the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." Id. In finding that the defendants did not satisfy the plain error test, the Cotton court noted that:

> the fairness and integrity of the criminal justice system depends on meting out to those inflicting the greatest harm on society the most severe punishments. The real threat then to the "fairness, integrity, and public reputation of judicial proceedings" would be if [defendants], despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial.

Id. at 634.

The Government argues that this case, like Cotton, involves "overwhelming" and "uncontroverted" evidence that Count One involved 500 grams or more of cocaine. With regard to Lauria, a finding that 500 grams of cocaine or 5 grams of cocaine base was involved in the

7

conspiracy would expose him to lifetime imprisonment, as the Government had filed a § 851 Notice concerning Lauria's prior conviction and the enhanced penalties resulting therefrom. Because Lauria's total effective sentence was only 420 months, the presence of "overwhelming" and "uncontroverted" evidence of 500 grams of cocaine or 5 grams of cocaine base would cure the Apprendi violation.

At trial, the Government introduced into evidence 495 grams of cocaine base, 6.5 grams of powdered cocaine, heroin and other controlled substances seized from 94 Foster Street[5] on July 26, 1995 and alleged to be part of the drug conspiracy charged in Count One. (Tr. 168-69, July 21, 1997; Gov't Exs. 19-23.) Ronald Fassett gave extensive testimony at trial about the drug conspiracy run by Lauria, testifying that the narcotics seized from 94 Foster Street were supplied by Lauria. (Tr. 31-47, July 22, 1997.) Fassett testified that in early 1995, he was obtaining 125 grams of cocaine from Lauria every week or two. (Id. at 7, 240.) He and Pappas would distribute the crack cocaine in amounts of 8 grams and in smaller amounts, and also distributed larger, wholesale amounts of powdered cocaine, from amounts of 3.5 grams and higher. (Id. at 25-27, 225.) Fassett also testified about traveling to New York with Lauria and Pappas to obtain cocaine, describing one incident where they obtained a kilogram of cocaine for which Lauria paid $23,000. (Id. at 39-40.)

Fassett's testimony was corroborated by the testimony of several other witnesses. Steven Laguna testified that he prepared crack cocaine for Fassett, Lauria and Pappas in 1995 at the 94 Foster Street apartment with Fassett, Lauria and Pappas present. (Tr. 185, 188-89, 192, July 24,

---

[5] During their search of 94 Foster Street, the police recovered several documents identifying the occupants of the apartment as Ronald and Charles Fassett and Marcos Pappas. (Tr. 195-99, July 21, 1997; Gov't Exs. 12-14.)

1997.) Edward Derenzo testified that he purchased fourteen grams of cocaine from Lauria on four or five occassions; the last time in the summer of 1996. (Tr. 12-14, 30, July 23, 1997.) Albert Bellucci, another government witness, observed some of these purchases. (Id. at 251.) Bellucci, an "enforcer" for the conspiracy, also testified that he traveled with Pappas to New York to purchase a kilogram of cocaine for Lauria's conspiracy. (Id. at 156-61.)

At the time of Lauria's sentencing, his attorney conceded that the offense involved well in excess of 500 grams of cocaine, arguing that "it is our position that the quantity should be between two kilograms, but less than 3.5 kilograms, Your Honor." (Tr. 25, March 31, 1998.) In light of the evidence produced at trial, this Court concluded that the government had proven that the conspiracy involved in excess of 50 kilograms of cocaine, finding that "if you give . . . Mr. Lauria the benefit of the doubt on that testimony, and you calculate it at one kilogram instead of two, you are still talking about 50 kilograms of powdered cocaine." (Id. at 47.) This Court later stated that the trial testimony established that the offense involved "56 and a quarter *kilograms* of cocaine." (Id. at 49-50 (emphasis added).)

As set forth above, the evidence that Lauria's conspiracy involved 500 or more grams of cocaine or 5 or more grams of crack cocaine was "overwhelming" and "essentially uncontroverted." Indeed, on direct appeal, the Second Circuit noted that the evidence against Lauria was "overwhelming," citing "the government-sponsored several witnesses who offered independent evidence of the charged conspiracy and Lauria's involvement in it, as well as records, physical evidence, and the testimony of law enforcement officers." Lauria, 1999 U.S. App. LEXIS 26501, at *2-3, 1999 WL 1012819, at *1. Moreover, Petitioner Lauria has never argued that the conspiracy involved less than 500 grams of cocaine. Therefore, in this case, as in

9

Cotton, it is held that the unobjected-to Apprendi error did not seriously affect the fairness, integrity or public reputation of judicial proceedings when Lauria was sentenced based on the drug quantity proved at trial.

Even if the evidence that Lauria's conspiracy involved 500 or more grams of cocaine or 5 or more grams of crack cocaine was not "overwhelming" and "essentially uncontroverted," any error is harmless because Lauria may receive the same effective sentence if he were to be resentenced pursuant to the default statutory maximum thirty-year term of imprisonment set forth in 21 U.S.C. § 841(b)(1)(C) where, as here, he was convicted of multiple offenses. The Court chose to let Defendant's sentences run concurrently. If the Court had run them consecutively, which is within its discretion, a maximum sentence of 360 months on Count One run consecutively with the sentences of 60 months on Count Two, 120 months on Count Three and 120 months on Count Four would have resulted in a sentence of 660 months, far exceeding the total effective sentence of 420 months imposed here. See United States v. White, 240 F.3d 127, 135 (2d Cir. 2001) (holding that there is "no constitutionally cognizable right to concurrent, rather than consecutive, sentences").

Section 5G1.2(d) of the Guidelines provides that, in imposing a sentence in a case involving multiple counts of conviction,

> if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment [arrived at through application of the Guidelines], then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d). In other words, "in the case of multiple counts of conviction, [section

5G1.2(d) of] the sentencing guidelines instructs that if the total punishment mandated by the guidelines exceeds the statutory maximum of the most serious offense of conviction, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment." United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002) (citations omitted). Here, the Court found that a 420-month term of imprisonment was appropriate. Therefore, even if Lauria were to be resentenced, the Court would be required, pursuant to U.S.S.G. § 5G1.2(d), to sentence him to a total effective sentence of 420 months, by running part or all of the remaining counts consecutive to one another.[6] See Outen, 286 F.3d at 639-40 (affirming the district court's sentence, which exceeded the statutory maximum, under U.S.S.G. § 5G1.2(d)'s "stacking" provision); McLean, 287 F.3d at 136-37 (finding that the plain Apprendi error did not affect the defendant's substantial rights and declining to remand or modify the sentence because, in the absence of the error, the application of U.S.S.G. § 5G1.2(d) would have resulted in the same term of imprisonment); United States v. Blount, 291 F.3d 201, 213-14 (2d Cir. 2002) (same).

Accordingly, the Government's Motion for Reconsideration is granted, the prior ruling is amended and Lauria's 420-month term of imprisonment will stand; because the evidence of drug quantity adduced at trial was "overwhelming" and "uncontroverted," and because Lauria may be resentenced to the same effective term of imprisonment by running the sentences consecutively, the omission of drug quantity from the indictment was a harmless error and need not result in resentencing. Because this Court has found that the Lauria's sentence will stand under Cotton's

---

[6] A total aggregate sentence of 420 months falls far below the total statutory maximum of 660 months available to this Court at the time of sentencing.

plain error analysis or under the "stacking" analysis, it is unnecessary to consider the Government's argument with regard to Lauria's ineffective assistance of counsel claim.

### B.  Petitioners' Motion for Reconsideration

Petitioners filed a joint motion for reconsideration, requesting reconsideration of this Court's December 13, 2006 Ruling. In their motion, Petitioners raise arguments that have already been rejected and criticize the Court for failing to address certain arguments in its December 13 Ruling. If any arguments and/or evidence were not directly addressed in the Court's sixty-three page decision, it was only because the issues were decided on other grounds, rendering the arguments moot. Petitioners have failed to point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," and therefore, their Motion for Reconsideration is denied. Virgin Atl., 956 F.2d at 1255. Because they simply seek to relitigate issues that have already been decided, the Court will not entertain their arguments. See Shrader, 70 F.3d at 257.

### IV.  CONCLUSION

For the foregoing reasons, the Government's Motion for Reconsideration [Doc. No. 412] is **granted** and Petitioners' Motion for Reconsideration [Doc. No. 414] is **denied**. Because the issues presented in these motions and in the December 13, 2006 Ruling are "debatable among jurists of reason," Barefoot v. Estelle, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983) (internal quotations omitted), Petitioners' request for a certificate of appealability is **granted** and, in accordance with 28 U.S.C. § 2253(c) and Rule 22(b) of the Federal Rules of Appellate Procedure and Second Circuit Rule 22a, a certificate of appealability shall hereby issue.

SO ORDERED.

Dated at New Haven, Connecticut, April  5 , 2007.

_____/s/_____
Peter C. Dorsey, U.S. District Judge
District of Connecticut