UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 3:96-cr-185(RNC) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) |
| GORDON LAURIA, | ) November 14, 2016 |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GORDON LAURIA'S MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. 3582(c)(2)**

## I. PRELIMINARY STATEMENT

Gordon Lauria, Defendant pro se, submits this memorandum of law in support of his motion for a sentence reduction pursuant to 18 U.S.C. 3582(c)(2) on the basis of a retroactive amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), specifically, Amendment 782. For the reasons that follow, this Court should either re-sentence Lauria de novo, or enter an amended judgment reducing his term of imprisonment to 262 months.

## II. BACKGROUND

A six day trial held between July 21-29 of 1997 was concluded with the jury finding Lauria guilty of conspiracy to possess with intent to distribute cocaine under 21 U.S.C. 846 (Count One); conspiracy to retaliate against a witness under

1

18 U.S.C. 371 (Count Two); and two counts of retaliation against a witness under 18 U.S.C. 1513(b)(2) (Counts Three and Four). (Doc. 187).

Lauria was sentenced to a term of 420 months imprisonment on March 31, 1998. (Doc. 247). Lauria's convictions were affirmed on direct appeal. *See, United States v. Lauria*, 2d Cir., No. 98-1214 (Oct. 19, 1999). The Supreme Court denied certiorari on October 2, 2000. *See, Lauria v. United States*, 531 U.S. 869 (2000).

Lauria timely moved to vacate, set aside, or correct sentence under 28 U.S.C. 2255 in October of 2001. After more than five years of briefing and court-ordered supplemental briefing, Judge Dorsey granted Lauria's section 2255 motion in part (holding that a re-sentencing was required since Lauria's sentence exceeded the statutory maximum applicable per *Apprendi v. New Jersey*, 530 U.S. 466 (2000)) and denied it in part on December 13, 2006. (Doc. 411). The government moved for reconsideration and without giving Lauria notice or an opportunity to oppose, on April 5, 2007 Judge Dorsey granted the government's motion and rescinded the re-sentencing he found was warranted four months earlier. However, a certificate of appealability was granted as to all issues in that same ruling. (Doc. 423).

On January 25, 2010, the Second Circuit affirmed Judge Dorsey's denial of section 2255 relief and dismissed for lack of jurisdiction that part of Lauria's

appeal relative to the April 5, 2007 ruling. *See, Lauria v. United States*, 362 Fed. Appx. 175 (2d Cir. 2010), *cert. den.*, 131 S.Ct. 996 (2011).

In December of 2014 Lauria moved under Fed.R.Civ.P. 60(b) for relief from Judge Dorsey's April 5, 2007 ruling rescinding his finding that a re-sentencing was warranted on the basis that the lack of notice and an opportunity to oppose the government's motion for reconsideration prior to the Court granting the same, constitutes the sort of "defect" that can be redressed under Rule 60(b). Lauria also sought entry of judgment as to the April 5, 2007 ruling so he could file a timely notice of appeal to challenge that ruling on the merits. That motion was re-submitted in April of 2016 due to an administrative error by the Clerk's Office in processing the initial filing. (Doc. 562). This Court denied that motion, and related filings, via "Docket Text" entries with no actual orders of an orthodox nature. (Doc. 563, 564, 565, 566, and 567).

Lauria now seeks a sentence reduction under 18 U.S.C. 3582(c)(2) based on a retroactive amendment to the Guidelines that lower Lauria's offense level.

### III. ARGUMENT

#### A. Per Amendment 782 Lauria's Sentence Should Be Reduced To 262 Months

##### 1. Legal Standard

Under 18 U.S.C. 3582(c)(2), "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by

the Sentencing Commission" may move for a sentence reduction. *Id.* In considering such a motion, "a district court must engage in a 'two step approach.'" *United States v. Bethea*, 735 F.3d 86, 87 (2d Cir. 2013)(quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010)). "At step one, the court 'must consider whether the defendant is eligible for a reduction by calculating the Guidelines range that would have been applicable had the amended Guidelines been in place at the time the defendant was originally sentenced.'" *Id.* (Quoting *United States v. Wilson*, 716 F.3d 50, 52 (2d Cir. 2013)). "At step two, '3582(c)(2) instructs a court to consider any applicable [18 U.S.C.] 3553(a) factors and determine whether in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case.'" *Id.* (Quoting *Dillon*, 560 U.S., at 827).

The factors under 18 U.S.C. 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed...; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established...; (5) any pertinent policy statement of the Sentencing Commission...; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.... *Id.*

2. **Discussion**

   a. **Step One--Eligibility**

4

At Lauria's original sentencing in 1998, Judge Dorsey found that the types and quantities of drugs attributable to Lauria was 610 grams of cocaine base ("crack"), and 56.25 kilograms of powder cocaine, (Doc. 271, at 53-56), even though the only physical drug evidence at trial (which was actually charged as part and parcel of a multi-defendant drug conspiracy indictment Lauria was not implicated in) consisted of 348 grams of crack and 147 grams of powder cocaine. (Doc. 209, at 169-73, 176-78, 183, 200-15).

Almost a decade later during Lauria's section 2255 litigation, in granting the government's motion to reconsider Judge Dorsey's December 13, 2006 grant of a re-sentencing (based on the *Apprendi* violation arising from Lauria's sentence of 35 years exceeding the statutory maximum of 30 years applicable under 21 U.S.C. 841(b)(1)(C) since there was no allegation of drug quantity in the indictment and no finding by the jury at trial), Judge Dorsey made new findings different from what he found at Lauria's original sentencing and left Lauria's statutory maximum exceeding 35 year sentence intact.

Specifically, the findings by Judge Dorsey which now form the basis of Lauria's sentence (which finding was based entirely on the government's argument in seeking reconsideration) is that the quantity of cocaine is at least 500 grams and the quantity of crack at least 5 grams, thus invoking the 500 grams but less than 5 kilogram of cocaine and at least 5 grams but less than 50 grams of crack statutory

5

range per 21 U.S.C. 841(b)(1)(B) (that amount of crack would now fall under 841(b)(1)(C)). That finding was based in part on the argument of Lauria's sentencing counsel (which the government argued in support of in Lauria's section 2255 litigation to bolster its argument seeking to evade the consequences of *Apprendi*) in 1998 that Lauria's base offense level on the drugs should have been based on no more than 3.5 kilograms of cocaine. (Doc. 423, at 4-11).

Per retroactive Amendment 782 the base offense level that applies to the drug quantity Judge Dorsey attributed (after consideration of the indictment, the lack of jury findings, and the government's argument urging attribution of the drug quantity argued for by Lauria's counsel at the original sentencing in 1998) to Lauria in 2007, (Doc. 423, at 8-10 (3.5 kilograms of powder cocaine)), is 28 pursuant to U.S.S.G. 2D1.1(c)(6). With the 4-level role increase and 2-level obstruction increase Judge Dorsey applied in 1998 (Doc. 271, at 79), and left undisturbed in 2007, (Doc. 423, at 4-11), the total offense level that now applies to Lauria is 34. If Lauria is placed in Criminal History Category ("CHC") IV (more discussion on that below) his sentencing range is 210-262 months. If his CHC remains the VI applied in 1998, the range is 262-327 months.

Regardless of which new range the Court decides is applicable, Lauria fits within the section 3582(c)(2) primary criteria since his 35 year term of imprisonment is "based on a sentencing range that has subsequently been lowered

6

by the Sentencing Commission[,]" *i.e.*, 210-262 months or 262-327 months per a level 34, either of which is lower than the 360 to life range he was sentenced under at a level 42.

Thus, a substantially lower range would have applied at Lauria's original sentencing had the amended guidelines that now apply been in place at the time of Lauria's original sentencing. Step one (eligibility), *Wilson*, 716 F.3d, at 52, is thus satisfied.

### b. Step Two--Reduction Warranted

Several factors within the ambit of section 3553(a) are relevant to this Court's determination of whether it should exercise its discretion to grant Lauria the sentence reduction he seeks, in whole or in part per the facts of this particular case. *Dillon*, 560 U.S., at 827. To aid this Court in making an informed decision in that regard, Lauria submits the following perspective and points.

### (i) Then/Now

This case began in 1996 at the height of the "War on Drugs" and "Tough on Crime" era, it was tried in 1997, and in 1998 Lauria was sentenced. Per the legal standard applicable in federal drug cases back then, the government was not required to allege or prove any particular quantity of drugs to a jury under the reasonable doubt standard. The jury in this case simply found Lauria guilty of

conspiring to possess with intent to distribute a substance contained a "detectable" amount of cocaine. (Doc. 187).

At sentencing Judge Dorsey applied the then-applicable extremely low preponderance of the evidence standard and attributed 610 grams of crack and 56 kilograms of powder cocaine to Lauria based solely on the testimony (which was acknowledged by Judge Dorsey to be nothing more than an "estimate" or "assessment") of a witness who testified to get out of a 14-21 year prison sentence (with a maximum of life), which testimony resulted in a sentence of just 5 months imprisonment being imposed on that witness, and without which testimony there would have been no case to put before a jury. This was a witness intensified prosecution that lacked bona fide independent support, *i.e.*, no wiretaps, no video or audio recordings of any sort, no photographs, no corroborating law enforcement testimony. The physical evidence that was admitted could not have been attributed to Lauria without the testimony of the witness who got a 5 month (pre-trial detention) prison sentence instead of 14-21 years (with a maximum of life). Indeed, the only physical evidence in this case was 348 grams of crack and 147 grams of powder cocaine seized from the apartment of the witness who attributed those drugs to Lauria (instead of his conspirators he was indicted with), in exchange for a 5 month prison sentence as opposed to a 14-21 year prison sentence, and the benefit to his brother and other co-defendants who by that

kilograms of powder cocaine based on the arguments Lauria's counsel made for sentencing purposes in 1998, which the government persuaded Judge Dorsey to find was a concession when he decided in 2007 to base Lauria's sentence on that quantity.

Additionally, although Lauria was classified a career criminal at sentencing in 1998, he was not sentenced under the career offender provision (the varied offense levels of U.S.S.G. 4B1.1(b)) of the Guidelines. The only impact was that his CHC was made a VI. However, per developments in the law since 1998, the Connecticut conviction (under CGS 21a-277(b)) that resulted in Lauria being deemed a career offender is no longer categorically a qualifying conviction to invoke the career offender provision of the Guidelines. *See, United States v. Savage*, 542 F.3d 959, 964-65 (2d Cir. 2008)(holding that CGS 21a-277(b) is not categorically a conviction for a "controlled substance offense" as that term is defined in U.S.S.G. 4B1.2(b)). Even if this Court were to hold that it cannot alter Lauria's sentencing range from the CHC VI originally applied to the CHC IV that would now apply (although Lauria submits this Court can if it chooses to), such is of no consequence. The total offense level now applicable per the reduction provided by Amendment 782 based on the 3.5 kilograms Judge Dorsey based Lauria's sentence on in 2007, (Doc. 423, at 8-10), with the same enhancements originally applied, is 34 (28 +2 (obstruction) +4 (role)=34). In CHC VI originally

applied, the new sentencing range becomes 262-327 months. In CHC IV the range is 210-262. However, because the Sentencing Commission has directed courts not to impose a sentence that would be less than the amount of time already served, U.S.S.G. 1B1.10(b)(2)(C), because Lauria has already served 242 months as of time of the filing of this motion, and because 262 months is within both ranges, it is respectfully submitted that 262 months is what Lauria's sentence should be reduced to.

The ultimate question to be decided at this juncture is whether or not the 35 year sentence imposed back in the middle of the ramped up "War on Drugs" and "Tough on Crime" era of the 1990s would be imposed by this Court now post-*Apprendi* and post-*United States v. Booker*, 543 U.S. 220 (2005)(restoring discretion to federal sentencing judges by making Guidelines non-mandatory), and in a world where there is at this very moment bi-partisan recognition that too much time was being given out during the era when Lauria was sentenced to 35 years based on the "estimate" or "assessment" of a witness who has never said that "estimate" or "assessment" was accurate or reliable, and which "estimate" or "assessment" the government retreated from by relying on arguments made by Lauria's counsel at sentencing to persuade Judge Dorsey to make new findings in 2007 by deeming those arguments a concession that 3.5 kilograms of powder cocaine was the proper drug type and quantity to attribute to Lauria.

11

A sentence of 35 years is simply not appropriate for the nature of this case and the 262 months being sought in this section 3582(c)(2) proceeding is still too high. It is thus respectfully submitted that it would be appropriate for this Court to exercise its discretion and impose the 262 month sentence Lauria seeks since Lauria is among those who were subject to the draconian sentencing era in federal criminal justice that has now been condemned on a bi-partisan scale. The amendment Lauria seeks the reduction under is among the steps being taken to bring some measure of relief to defendants, such as Lauria, who were subject to the draconian drug sentencing era. It would be wrong to deprive Lauria of the minimal relief provided for by Amendment 782 as applicable in this case.

### (a) Statistically And Comparatively There is A Grave Disparity With Lauria's 35 Year Sentence

Lauria has been imprisoned since his arrest in 1996. Statistical data available relative to drug activity in the New Haven area of the State of Connecticut from then through the present day will not reflect any reduction in drug activity in Lauria's absence. Indeed, this Court's own data will demonstrate increases in drug prosecutions in this district subsequent to Lauria's arrest in 1996. The point: Even if everything the government has ever said about Lauria was 100% true, the statistical evidence will demonstrate that Lauria was not as major a player in the drug trade that the government portrayed him to be since drug crime would have gone down, not increased, in Lauria's absence.

Moreover, comparatively, a 35 year sentence for Lauria is disproportionate to drug offenders at the highest level of the drug trade. Specifically, annexed hereto as Exhibit A is a news article from USA Today by Kevin Johnson, dated September 26, 2006, entitled: "Cali drug chiefs given 30-year prison terms." The two men discussed in that article were said to have been responsible for "up to 80% of the cocaine in the USA," and a high-ranking DEA official was quoted as saying the men "defined the word 'kingpins'" who ruled a "drug empire" through "ruthless oversight" that included "wars" that "claimed hundreds of lives...." Billions (not millions, BILLIONS) of dollars in assets were seized, which was the largest drug-related forfeiture in U.S. history...." It is written that the "kingpins" reigned for a "20-year period" that was ended with sentences of 30 years for each man.

The drug conspiracy alleged in my indictment was said to have been less than two years and Judge Dorsey narrowed that down to a one year period, and taking the evidence in a light most favorable to the government, there has been no claim at all that Lauria made extraordinary amounts of money. No millions, and certainly no billions, of dollars was seized from Lauria. There was no forfeiture of money, property, or assets of any kind from Lauria. That, coupled with this Court's own statistics (not including additional state and local statistics) which demonstrate rises in drug prosecutions involving multi-defendant indictments subsequent to Lauria's imprisonment in September of 1996, amply establishes that

13

Lauria was not a major player in the drug trade as a whole, or even locally in Connecticut.

If 30 year sentences were deemed appropriate by the ultra-conservative George W. Bush administration for "kingpins" who were at the upper echelon of the drug trade as a whole, who were responsible for multiple homicides of law enforcement officers and prosecutors, and whose absence made a measureable impact on the nationwide drug trade, then it is fair to say in comparison that Lauria shouldn't have been sentenced to even a third (10 years) of what those "kingpins" got, and he certainly shouldn't have been sentenced to more time than them.

Thus, that disparity alone is a sufficient basis for this Court to exercise its discretion and reduce Lauria's sentence to 262 months.

### (iii) Additional Factors That Support The Reduction

In addition to the foregoing, the following factors support an exercise of this Court's discretion:

1. Lauria does not have a bad prison record at all for someone who has been imprisoned for over 20-years. Lauria began his current term of imprisonment at United States Penitentiary Lewisburg in 1998 when that penitentiary had a reputation for being among the most violent in the entire country. Nevertheless, Lauria earned his way to a lesser security institution and has had only two non-weapon related fights with other prisoners. The fact that it has only been two and

14

that neither involved weapons is extremely remarkable for someone who has been in federal prison for over 20 years. Federal prison is not a normal setting for any human being and no prison official would argue that Lauria's two minor fist-fights and minimal disciplinary history otherwise over a 20-year period should disqualify him from obtaining some measure of relief from the draconian 35 year sentence imposed on him that exceeds what has been imposed on more violent and culpable defendants.

2. Although Lauria was also convicted of witness retaliation-related offenses, no weapons were alleged to be involved, and he was not alleged to have made any physical contact with the "witness" allegedly retaliated against. In fact, another government witness (Albert "Chicky" Bellucci) who was in Lauria's vehicle during an incident charged as an act of retaliation said the car chase involved was provoked by passengers in the witness' vehicle and that Lauria had no idea who he was chasing and that when he realized who it was, it was Lauria that de-escalated the situation by terminating the car chase. Again, a government witness said that. Moreover, even though Lauria's co-defendant Pappas is the only person ever claimed to have punched the witness at issue, the U.S. Probation Officer that prepared his PSR recommended a victim's wrongful conduct departure for Pappas. Again, Lauria never had any physical contact with the alleged witness, and he has no desire to ever have any physical contact with him.

3. Rapists, child molesters, murderers, and some terrorists have been sentenced to far less time than Lauria has been for a drug crime that is based for the most part on "ghost drugs" that there is no credible proof existed in the type and quantity attributed to Lauria.

4. Lauria comes from a good family and he has their support in his effort to be released from prison at this point in time. Annexed hereto as Exhibit B are letters from Lauria's family members that were prepared in the context of a clemency petition Lauria submitted to President Obama. Those letters are also relevant for present purposes and Lauria asks that the Court consider what his family (who include one retired federal law enforcement officer, and one active police officer) has to say about him and how Lauria will have their support in all ways upon his release.

5. Lauria has served over 20 years straight for this case. Anything further is overkill and will serve no useful purpose for Lauria or society. Too much taxpayer expense has already been wasted in keeping Lauria in prison this long and an exercise of discretion to mitigate further expense is appropriate at this point. Enough is enough.

Accordingly, it is respectfully submitted that step two (reduction warranted) of the 3582(c)(2) standard is amply satisfied.

## IV. CONCLUSION

For all of the reasons herein, and in the spirit of the bi-partisan recognition that the sentences imposed upon defendants such as Lauria during the ramped up "War on Drugs" and "Tough on Crime" era of the 1990s were too long and unjust, Lauria prays this Court will exercise its discretion and provide some measure of relief by granting Lauria a reduction of his term of imprisonment from the draconian 35 years he has already served over 20 years of, to 262 months.

Respectfully submitted,

_____
Gordon Lauria, *pro se*
Reg. No. 10210-014
FCI Fairton
P.O. Box 420
Fairton, NJ 08320

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing was served via pre-paid, First-Class, U.S. Mail, on this 14 day of November, 2016, upon:

Peter Markle, AUSA
U.S. Attorney's Office
157 Church Street, 25th Fl.
New Haven, CT 06510

By: _____
Gordon Lauria