UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2018 MAR 26 P 1:15

GORDON LAURIA,                 )
                                     )
         Petitioner,        )  Case No. 3:96-CR-185-RNC
                                       )           3:01-CV-1894-RNC
        vs.                    )
                                       )
UNITED STATES OF AMERICA,   )  March 20, 2018
                                       )
         Respondent.       )

## DEFENDANT LAURIA'S COMBINED MOTION AND MEMORANDUM OF LAW SEEKING FED.R.CIV. P. 60(b)(4) AND (6) RELIEF FROM THE COURT'S APRIL 5, 2007 RULING (DOC. 423) BASED ON NEW INFORMATION AND RECENT AUTHORITY CLARIFYING THE LEGAL STANDARD

### I. PRELIMINARY STATEMENT

Gordon Lauria, pro se, respectfully moves for relief from the Court's April 5, 2007 ruling (Doc. 423) granting the government's reconsideration motion and reversing itself as to the sentencing relief it found Lauria was entitled to, and granted, in its December 13, 2006 ruling (Doc. 411). For the reasons discussed below, Lauria respectfully submits that his 28 U.S.C. § 2255 proceeding should be reopened pursuant to Federal Rule of Civil Procedure 60(b)(4) and (6), based on new information and recent authority that clarifies the legal standard in the Rule 60(b) and COA contexts.

### II. BACKGROUND

After a six day trial held between July 21-29 of 1997, Lauria was found guilty of conspiracy to possess with intent to distribute an unspecified quantity of cocaine under 21 U.S.C. § 846 (Count One), conspiracy to retaliate against a witness under 18 U.S.C. § 371 (Count Two), and two counts of retaliation against a witness under 18 U.S.C. § 1513(b)(2) (Counts Three and Four). (Doc. 187).

On March 31, 1998 Lauria was sentenced to a term of 420 months imprisonment. (Doc. 247).  Lauria's convictions were affirmed on direct appeal.  See, United States v. Lauria, 2d Cir., No. 98-1214 (Oct. 19, 1999), cert. denied, Lauria v. United States, 531 U.S. 869 (Oct. 2, 2000).

Lauria timely moved to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 in October of 2001.  After more than five years of briefing and court-ordered supplemental briefing, on December 13, 2006 Judge Dorsey granted Lauria's section 2255 motion in part (holding that a re-sentencing was required since Lauria's sentence exceeded the statutory maximum applicable per Apprendi v. New Jersey, 530 U.S. 466 (2000)), and denied it in part. (Doc. 411).

However, on April 5, 2007 (without affording Lauria notice or an opportunity to oppose) Judge Dorsey granted the government's motion for reconsideration and rescinded the re-sentencing he found was warranted.  A COA was granted as to all issues in that same ruling. (Doc. 423).

On January 25, 2010, the Second Circuit affirmed Judge Dorsey's denial of § 2255 relief and dismissed for lack of jurisdiction that part of Lauria's appeal relative to the April 5, 2007 ruling where Judge Dorsey rescinded his prior grant of a re-sentencing.  See, Lauria v. United States, 362 Fed. Appx. 175 (2d Cir. 2010), cert. denied, 131 S.Ct. 996 (2011).

In December of 2014 Lauria moved for Rule 60(b) relief from Judge Dorsey's April 5, 2007 ruling.  That motion was re-

submitted in April of 2016 due to some sort of administrative error by the Clerk's Office as to the initial filing. (Doc. 562). The Court denied that motion and related filings on April 21, 2016 via "Docket Text" entries. (Docs. 563, 564, 565, 566, 567). A COA was denied as to the Rule 60(b) motion on January 24, 2017. (Doc. 579).

On November 16, 2016 Lauria filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). (Doc. 573). On April 24, 2017 this Court denied that motion. (Doc. 589).

Based on information that has come to light subsequent to the Court's denial of Lauria's earlier Rule 60(b) motion, and based on the Supreme Court's recent clarification of the circumstances under which Rule 60(b) relief is appropriate and its clarification of the standard governing issuance of a COA in the Rule 60(b) context, Lauria now seeks relief under Rule 60(b)(4) and (6).

### III. RELEVANT FACTS

The following facts are relevant to the issues Lauria advances in this motion.

### A. The Section 2255 Litigation Re: Apprendi

In his section 2255 litigation Lauria claimed ineffective assistance of counsel based on his attorneys' failure to preserve and argue issues within the ambit of Apprendi, supra, as well as free-standing Apprendi-based arguments. In response the government made several arguments in opposition, the most prominent one being that the plain error doctrine barred relief

under Apprendi.  (Doc. 334, at 19-32).

After the litigation had been pending for about three years,
Judge Dorsey ordered supplemental briefing.  (Doc. 365).   In
doing so, Judge Dorsey explicitly rejected part of the
government's argument challenging the applicability of Apprendi
when he held that Apprendi and its progeny applied to Lauria
since his conviction was not final when Apprendi was decided,
(Doc. 365, at 2-4), and ordered supplemental briefing on the
Apprendi issues.  (Doc. 365, at 7-9).  Judge Dorsey emphasized
that the government should fully state its position on the nature
and quantum of the evidence on drug quantity and explicitly noted
that the government was free to re-assert the plain error
argument it had already advanced.  (Doc. 365, at 9 n. 6).

In compliance with Judge Dorsey's order the government
submitted an oversized brief that included a highly detailed
position on what the record showed on drug quantity, and devoted
a substantial length arguing for a finding of plain error and no
remedy, which was the second time the government presented that
argument.  (Doc. 381, at 29-33).

B. **Judge Dorsey's Initial Ruling**

By ruling dated December 13, 2006 Judge Dorsey held that
Lauria's 35-year sentence as to Count One of the superseding
indictment that exceeded the default maximum applicable per
Apprendi and the jury's verdict (21 U.S.C. § 841(b)(1)(C)) by
five years, was unconstitutional warranting a remedy in the form
of re-sentencing with a sentence limited to no more than 30

years.  (Doc. 411, at 37-39).  In so holding, Judge Dorsey fully
considered and rejected via a meaningful and thorough analysis
the government's twice raised, (Doc. 334, at 19-32; Doc. 381, at
29-33), plain error/no remedy argument.  (Doc. 411, at 35-39).

## C. Reconsideration, COA, And The § 2255 Appeal

Via a December 20, 2006 reconsideration filing, the
government re-argued the identical plain error/no remedy argument
it put before Judge Dorsey in at least two of its prior filings,
(Doc. 334, at 19-32; Doc. 381, at 29-33), which Judge Dorsey
fully considered and rejected.  (Doc. 412, at 3-11 (arguing
identical "overwhelming evidence" and "stacking" arguments it
previously raised in Doc. 381, at 29-33)).

Based on how Judge Dorsey advised the government's highly
experienced attorneys when a response to one of Lauria's filings
was necessary, and Lauria's understanding that all parties in
litigation are to be treated fair and equal he believed that he
would be given the same notification if there was a possibility
of a ruling adverse to him relative to any filing submitted by
the government.  (Attachment 1, annexed hereto, at ¶¶ 2-3).  That
was especially so with regard to the government's reconsideration
motion since the government's reconsideration motion was nothing
more than a rehash of the very same argument Judge Dorsey had
already rejected in the December 13, 2006 ruling.  (Attachment 1,
at ¶ 4).

Nevertheless, Judge Dorsey granted the government's motion
for reconsideration and denied the sentencing relief he

previously granted, (Doc. 423), without affording Lauria notice
or an opportunity to submit an opposition to the government's
filing. (Attachment 1, at ¶¶ 6-7).

In that same ruling, Judge Dorsey found that the legal
standard governing the issuance of a COA was satisfied with
regard to all of the issues advanced by Lauria, including the
Apprendi-based sentencing issue. (Doc. 423, at 12).

On appeal of the denial of Lauria's § 2255 motion, the
Second Circuit sua sponte held that it did not have jurisdiction
over that part of Lauria's appeal relative to Judge Dorsey's
reconsideration ruling as to the Apprendi issue, id. 362 Fed.
Appx., at 175, even though a COA was granted on that issue in the
reconsideration ruling and the holding in Gollomp v. Spitzer, 568
F.3d, at 364-65 (2d Cir. 2009)(notice of appeal filed before
ruling on reconsideration motion became effective per FRAP
4(a)(4)(B)(i) as of date of ruling on reconsideration motion) and
Second Cir. Rule 22(b), arguably conflicts with that holding.
Thus, the correctness of Judge Dorsey's reconsideration ruling
has not been reviewed even though he intended for it to be when
he granted a COA on that issue.

D. **Lauria's First Rule 60(b) Motion And The Decision**

Lauria sought relief from Judge Dorsey's April 5, 2007
ruling on the basis that the Court's failure to afford him notice
and an opportunity to be heard prior to granting the government
the relief it sought via reconsideration, constituted a "defect"
redressable under Rule 60(b) per the Supreme Court's decision in

Gonzalez v. Crosby, 545 U.S. 524, 532 (2005), and the Second
Circuit's decision in Rodriguez v. Mitchell, 252 F.3d 191, 199
(2d Cir. 2001).  (Doc. 562).

Even though the government did not oppose Lauria's motion
and related filings from December of 2014 through April of 2016,
this Court formulated four arguments in opposition to Lauria's
motion and validated its own arguments denying Lauria's motion
for the following reasons:

> (1) the motion is untimely under Rule 60(c), which
> requires that a motion under Rule 60(b) be made
> within a reasonable time; (2) petitioner has not
> shown 'extraordinary circumstances' required to
> obtain relief under Rule 60(b)(6); (3) there was
> no defect in the proceeding because petitioner had
> notice of the government's motion for reconsideration
> and an opportunity to respond but did not file a
> memorandum in opposition to the motion within the
> time provided by the applicable rules; and (4) even
> if petitioner was arguably entitled to additional
> notice and an opportunity to respond due to his pro se
> status, which is doubtful, there is no reasonable
> probability that the filing of an opposition by
> petitioner would have changed the outcome (Judge
> Dorsey's order makes it plain that petitioner would
> have received the same sentence in any event)."

(Doc. 563).

There is no indication in the record that the Court's denial
of Lauria's motion seeking continuation of the COA Judge Dorsey
previously granted, (Doc. 570), was based on anything other than
the Court's above quoted assessment of the merits, rather than an
assessment of whether there was a "debatable" issue.  (Doc. 579).

## E. Subsequent Relevant Developments

First, in response to Lauria's 18 U.S.C. § 3582(c)(2) motion
(Doc. 588) for a reduction of his sentence, the government made

an argument different than the one it prevailed on in seeking
reconsideration of Judge Dorsey's ruling granting Lauria
sentencing relief under § 2255.  Specifically, on reconsideration
of Judge Dorsey's December 13, 2006 grant of relief to Lauria,
(Doc. 411, at 35-39), the government persuaded Judge Dorsey to
find that 3.5 kilograms of cocaine was the drug quantity he
should find and that in so finding, Lauria was not entitled to
relief.  (Doc. 423, at 8-10).

However, in response to Lauria's § 3582 motion seeking a
sentence reduction based on the new retroactive (per U.S.S.G
Amendment 782) guidelines range applicable to the drug quantity
the government persuaded Judge Dorsey to apply so § 2255 relief
could be denied, the government argued that no reduction was
permitted because there would be no change in Lauria's sentencing
range.  But, that argument was based on the drug quantity found
at Lauria's sentencing in 1998 that Judge Dorsey found would be a
violation of the holding in Apprendi to apply to Lauria when he
granted § 2255 relief in his December 13, 2006 ruling, (Doc. 411,
at 35-39).  See, Gov. 4/11/17 Resp. (Doc. 588).

In denying Lauria's § 3582 motion on April 27, 2017 this
Court adopted the government's argument as to drug quantity that
was based entirely on the finding Judge Dorsey found was
unconstitutional in 2006.  (Doc. 589 (denying motion to reduce
sentence "for substantially the reasons stated in the
Government's opposition....")).

Second, Lauria's co-defendant Markos Pappas had a Rule 60(b)

motion pending that was also unopposed but denied by this Court
per its own arguments on July 7, 2017. (Doc. 606). Pappas moved
for reconsideration of that ruling. (Doc. 607). This Court
ordered the government to respond to that motion, (Doc. 608),
thus giving the government's very experienced attorneys fair
notice and an opportunity to respond, despite their own
independent knowledge of the rule governing responses to motions
as reflected in a prior filing at another stage in this
litigation where the government's AUSA (Peter Markle) still
assigned to this case wrote in response to Lauria's and Pappas'
argument that the government's failure to respond should have
entitled them to the relief they sought, that "[t]he government's
failure to respond to the motion was at its own peril...." (2d
Cir. Appeal No. 13-4760, Doc. 121, at 13).

Third, in February of 2017, the Supreme Court decided Buck
v. Davis, 580 U.S. ___, 137 S.Ct. 759 (Feb. 22, 2017), and in
that decision the Supreme Court clarified the COA standard in the
Rule 60(b) context and provided some general guidance on the
availability of the Rule 60(b) remedy when the circumstances
warrant the same regardless of the length of time that has
passed.

IV. ARGUMENT

POINT ONE: THE APRIL 5, 2007 RULING IS VOID UNDER RULE 60(b)(4)
           BASED ON THE SEVERAL DUE PROCESS VIOLATIONS ARISING
           FROM THE MANNER IN WHICH JUDGE DORSEY RESCINDED THE
           RESENTENCING HE FOUND NECESSARY

A. <u>Legal Standard</u>

"A judgment is void under Rule 60(b)(4) of the Federal Rules
of Civil Procedure 'only if the court that rendered it lacked
jurisdiction of the subject matter, or the parties, or if it
acted in a manner inconsistent with due process of law.'" <u>Grace
v. Bank of Leumi Trust Co.</u>, 443 F.3d 180, 193 (2d Cir.
2006)(quoting <u>Texlon Corp. v. Mfrs. Hanover Commercial Corp.</u>, 596
F.2d 1092, 1099 (2d Cir. 1979)). <u>See also</u>, <u>United Student Aid
Funds Inc. v. Espinoza</u>, 559 U.S. 260, 271 (2010)("Rule 60(b)(4)
applies on in the rare instance where a judgment is premised on a
certain type of jurisdiction error or a violation of due process
that deprives a party of notice or the opportunity to be
heard."); <u>Graves v. Phillips</u>, 531 Fed.Appx. 27, 29-30 (2d Cir.
2013)(denying relief but acknowledging that a due process
violation in a habeas proceeding can void a judgment within the
scope of Rule 60(b)(4)).

B. <u>Discussion</u>

There are four due process errors with respect to Judge
Dorsey's April 5, 2007 ruling that are within the scope of, and
warrant relief under, Rule 60(b)(4).

> 1. **The lack of fair and equal treatment by the Court
>    relative to notice and an opportunity to respond**

As discussed above it is indisputable that Judge Dorsey gave
the government notice and an opportunity to respond prior to

ruling on substantive filings Lauria submitted during his § 2255 litigation. Also as noted above, Lauria had no reason to believe he (a laymen) would be treated different in the context of notice and an opportunity to respond that the Court afforded the government's highly experienced army of attorneys. (Attachment 1, ¶¶ 2-4).

The disparity in treatment is further evident from the Court's ruling relative to Lauria's prior Rule 60(b) motion discussed supra at 7 and how the Court treated the government during Pappas' Rule 60(b) litigation discussed supra at 8-9.

Specifically, this Court previously said Lauria knew or should have known of the time period within which he should have filed any response to the government's reconsideration filing relative to the December 13, 2006 ruling, supra at 7, but this same Court recently gave the government notice and an opportunity to respond relative to Pappas' reconsideration filing as to the denial of his Rule 60(b) filing. (Doc. 608). That notice and opportunity to respond was provided despite the government's prior flaunting of its awareness (which this Court was made aware of in several filings prior to affording that notice and opportunity to respond, including in Doc. 607, at 8), of the consequences for failing to timely respond to a motion. See, 2d Cir., No. 13-4760, Doc. 121, at 13 (AUSA Pete Markle who is still assigned to this case wrote: "The government's failure to respond to the motion was at its own peril....").

It is an obvious due process violation to treat parties in
the same litigation differently and such is the precise sort of
scenario that gives rise to an appearance of injustice that is
contrary to the general mandate that "justice must satisfy the
appearance of justice." Offutt v. United States, 348 U.S. 11, 14
(1954).

Indeed, the notion that a federal habeas petitioner is to be
treated fairly is reflected in the Supreme Court's recent
emphasis in discussing the need to redress a wrongful sentence
that the "risk of injustice to the parties and the risk of
undermining the public's confidence in the judicial process[,]"
are among the factors to be considered by a Court considering
whether to grant Rule 60(b)(6) relief. Buck, 137 S.Ct., at 778.

Thus, the disparate treatment in how the Court has provided
the government's highly experienced attorneys fair notice and an
opportunity to respond to filings by Pappas and Lauria, but did
not provide that same notice and an opportunity to Lauria prior
to granting the government's reconsideration motion, is the
precise sort of "violation of due process that deprives a party
of notice or the opportunity to be heard[,]" that Rule 60(b)(4)
applies to. (Quoting United Student Aid, 559 U.S., at 271).

### 2. The lack of any basis for Judge Dorsey to reconsider the resentencing he found necessary in the December 13, 2006 ruling

It is well settled that reconsideration of an issue is
proper only where the moving party "can point to controlling
decisions or data that the court overlooked--matters, in other

words, that might reasonably be expected to alter the conclusion, reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).  The established grounds that justify reconsideration "are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)(internal quotations omitted).

It is also well settled that a motion for reconsideration is not a vehicle to simply rehash already rejected arguments.  See, Shrader, 70 F.3d, at 257 (a reconsideration motion should "not be granted where the moving party seeks solely to relitigate an issue already decided.").

In its reconsideration filing the government raised the identical plain error/stacking argument it pressed in its December 20, 2006 reconsideration motion in its initial opposition and in its court-ordered supplemental brief. (Compare, Doc. 334, at 19-32 and Doc. 381, at 29-33; with, Doc. 412, at 3-11).  Indeed, the facts that Judge Dorsey specifically noted in his order requiring supplemental briefing that the government could reassert its plain error argument, (Doc. 365, at 9 n. 6), and engaged in a lengthy and thoughtful plain error analysis in specifically holding that the plain error standard was fully satisfied and that Lauria was entitled to a re-sentencing, (Doc. 411, at 35-39), demonstrates that the exact plain error argument rehashed in the government's reconsideration

filing that resulted in the April 5, 2007 ruling was fully
considered and expressly rejected in the December 13, 2006
ruling.

More importantly, the government's reconsideration filing
did not point to any change of controlling law or anything else
not previously presented to, and considered by, Judge Dorsey.

Simply because the government did "not like the way
[Lauria's Apprendi issue] was resolved" by Judge Dorsey, such
does not give rise to a proper basis for reconsideration.
(Quoting Resource N.E. of Long Island v. town of Babylon, 80
F.Supp.2d 54, 64 (E.D.N.Y. 2000)).

Moreover, even if there was new information in the
government's filing that it had not previously presented (and
there clearly was not), a "motion for reconsideration may not be
used to plug gaps in an original argument or to argue in the
alternative once a decision has been made." Horsehead Res.
Devel. v. B.U.S. Environ. Services, 928 F.Supp. 287 (S.D.N.Y.
1996 (internal citations and quotation marks omitted).

Here, the government simply re-argued (for the third time)
the same plain error argument, rejected in the December 13, 2006
ruling, without any demonstration as to why reconsideration per
the governing legal standard justified reconsideration.  Judge
Dorsey's April 5, 2007 ruling does not identify any basis at all
for reconsideration per the governing reconsideration standard.

As such, the fact that Judge Dorsey changed his December 13,
2006 ruling based on the very same plain error argument he

specifically rejected and without any explanation as to how the reconsideration standard was satisfied, constitutes the sort of arbitrary and capricious decision-making the reconsideration standard is in place to prevent.  Such gives rise to a due process violation relative to the April 5, 2007 ruling that is within the scope of Rule 60(b)(4) that deserves the Court's attention at this juncture in order to prevent the continuation of the miscarriage of justice already present and real in this case arising from the unconstitutional sentence Judge Dorsey concluded Lauria was being subjected to in his December 13, 2006 ruling, and which has still not been corrected.

3. Mandatory application of the Sentencing Guidelines
   in the April 5, 2007 ruling

The government's argument that sought mandatory application of the Sentencing Guidelines, which Judge Dorsey subscribed to the third time the government raised it, gives rise to a due process error in the April 5, 2007 ruling that warrants redress under Rule 60(b)(4).

Specifically. the government successfully argued that even if its overwhelming/uncontroverted evidence argument was flawed (and as discussed _infra_ it was and is severely flawed), that any _Apprendi_ error was harmless because if the Court re-sentenced Lauria it would be _mandated_ under the Sentencing Guidelines to "stack" the sentences on all counts and impose the same 35 year sentence the Court found in the December 13, 2006 ruling was unconstitutional.

In subscribing to that argument in its April 5, 2007 ruling, the Court failed to recognize that the governing precedent that would have applied at any re-sentencing after its December 13. 2006 ruling, vitiated the government's argument (and the Court's April 5  2007 ruling adopting it) for four reasons.

_First_, prior to April 5, 2007 it was settled in the Second Circuit that in the _Apprendi_ context when a court is assessing whether a statutory maximum sentence has been exceeded "on the basis of facts found by the court and not the jury," the question is whether the maximum "sentence for a particular count[,]" has been exceeded. (Quoting _United States v. Rivera_, 282 F.3d 74, 76 (2d Cir. 2002)).  Judge Dorsey's holding in the April 5, 2007

ruling does not recognize that proper legal standard.

Second, after United States v. Booker, 543 U.S. 220 (2005), which would have applied at any re-sentencing post-December 13, 2006, the Sentencing Guidelines were rendered advisory as it was explicitly held in Booker that a Court's mandatory application of the Sentencing Guidelines violates due process. Nevertheless, Judge Dorsey held that application of the Sentencing Guidelines was mandatory, (Doc. 423, at 11 ("the Court would be required, pursuant to U.S.S.G. § 5G1.2(d), to sentence [Lauria] to a total effective sentence of 420 months...")), to produce the outcome as to sentencing urged by the government.  Clearly, due process is violated by the mandatory nature in which Judge Dorsey applied the Sentencing Guidelines post-Booker in the April 5, 2007 ruling.

Third, not only did Judge Dorsey actually apply the Sentencing Guidelines mandatorily in the April 5, 2007 ruling, he also failed to recognize that he would not have been mandated to apply the guidelines urged by the government post-Booker as to drug quantity, stacking, or any other factor.  And, more importantly, Judge Dorsey did not at all hold or even suggest that he would have applied the guidelines urged by the government if he was not mandated to do so.

Fourth, even if Judge Dorsey would have agreed with the government's arguments at any resentencing, the sentence must still comport with procedural and substantive due process by identifying the specific drug quantity and corollary statutory

basis (e.g., 21 U.S.C. § 841(b)(1)(A), (B), or (C)) for Lauria's
sentence, and findings must be made per 18 U.S.C. § 3553(a).  All
of that is necessary so Lauria could exercise his right to take a
direct appeal as to the basis for his judgment and sentence
reflected in it on, inter alia, reasonableness grounds.  The need
for a judgment (as discussed more in Point Two) and the
continuing nature of the due process violation within the April
5, 2007 ruling is reflected by the government's switch in
positions as to drug quantity that it successfully urged Judge
Dorsey to find in the April 5, 2007 ruling and its more recent
position successfully urged upon this Court that resulted in
Lauria being deemed ineligible for the sentence reduction he
sought in 2016 discussed supra at 7-8.

In taking a new fact position to reach a different legal
conclusion in the April 5, 2007 ruling that was the exact
opposite of the December 13, 2006 ruling as to drug quantity,
without holding a hearing, the Court violated the due process
required by the plain language of 28 U.S.C. § 2255(b) that
requires a hearing when the "files and records of the case [do
not] conclusively show that [Lauria was] entitled to no

Thus, these due process violations arising from the April 5,
2007 ruling warrant Rule 60(b)(4) redress in the form of voiding
that ruling and the sentence findings made therein and
reinstating the re-sentencing ordered in the December 13, 2006
ruling.

### 4. No hearing was held prior to altering the Court's December 13, 2006 conclusions

In taking a new fact position to reach a different legal
conclusion in the April 5  2007 ruling that was the exact
opposite of the December 13, 2006 ruling as to drug quantity,
without holding a hearing, the Court violated the due process
required by the plain language of 28 U.S.C. § 2255(b) that
requires a hearing when the "files and records of the case [do
not] conclusively show that [Lauria was] entitled to no

relief...." Id.

All of the new facts found by the Court in its April 5, 2007 ruling as to the evidence of drug quantity exceeding 500 grams of cocaine or 5 grams or more of crack cocaine, (Doc. 423, at 9-10), constitutes a whimsical change of position from what was found in the December 13, 2006 ruling and thereby created disputed facts that required a hearing pursuant to § 2255(b) to resolve.

The December 13, 2006 ruling was based on a proper assessment of what the files and records of the case showed and relief was granted in accord with that.  The April 5, 2007 ruling is not based on the record of this case because the facts found in the April 5, 2007 ruling are in direct conflict with what the record of this case actually shows as to the hot contest on the issue of drug quantity and the standard used to make the findings Judge Dorsey made in 1998 at Lauria's sentencing that he found were in violation of the constitution in his December 13, 2006 ruling.

Specifically, contrary to the basis in the record that supported the December 13, 2006 ruling, in the April 5, 2007 ruling the Court found that "Lauria has never argued that the conspiracy involved less than 500 grams of cocaine." (Doc. 423, at 9).  The finding is absolutely contradicted by the record in this case.

The record in this case shows that Pappas objected to: (a) any and all findings by the Court concerning drug quantity, (Doc.

272, at 124); (b) application of the preponderance standard and
he specifically sought a higher standard for the drug quantity
determinations, (Doc. 272, at 131); and (c) attribution of the 94
Foster Street crack cocaine related evidence, (Doc. 272, at 36-
46, 95-133). Lauria adopted all of those arguments without any
objection or opposition by the government. (Doc. 271, at 11).

Judge Dorsey refused to apply a higher standard and employed
the objected to, very low, preponderance standard in order to
credit testimony as to ghost drugs that were never proven to
actually exist and to attribute drugs from 94 Foster Street that
were actually charged in an entirely separate indictment in
another case Lauria was not implicated or charged in, to make the
findings he made in 1998 as to drug quantity. In making those
findings Judge Dorsey made it very clear that his findings were
limited to and entirely based on the preponderance standard and
he gave absolutely no indication in 1998 that he would find the
same way per the higher standard sought by Lauria at that time.
(Doc. 271, at 51 ("...while you have a very real credibility
problem [with the evidence/testimony as to drug quantity] it's a
fair preponderance of the evidence measure that is applied.")).

The December 13, 2006 ruling was consistent with the Court's
view of the evidence at sentencing in 1998. Thus, not only does
the April 5, 2007 ruling wherein Judge Dorsey made new fact-
findings as to the evidence on drug quantity being overwhelming
and uncontroverted conflict with the December 13, 2006 findings
as to drug quantity and what standard those findings satisfied,

it also squarely conflicts with Judge Dorsey's findings at
sentencing in 1998 as to the strength of the questionable
evidence on drug quantity even in the context of the very low
preponderance standard.

Since the fact-findings in the April 5, 2007 ruling were
made without a hearing and are in conflict with prior findings
based on the record of Lauria's case, a hearing was absolutely
necessary before the Court could make such a drastic change from
its December 13, 2006 legal conclusions and fact-findings dating
back to 1998.

It is settled that in a proper case such as this one where
the circumstances render a hearing appropriate, a decision made
without a hearing can amount to a due process violation that is
within the scope of Rule 60(b)(4). See, Graves, 531 Fed.Appx.,
at 29-30 (denying relief but acknowledging that a due process
violation in a habeas proceeding can arise based on failure to
hold a hearing when one is appropriate and thus void a judgment
under Rule 60(b)(4)).

Accordingly, the unique circumstances here where there is a
sharp conflict between earlier fact-findings and legal
conclusions, and later fact-findings and legal conclusions,
demonstrates that there was a need for a hearing prior to any
alteration of the fact-findings and legal conclusions in the
December 13, 2006 ruling, thus rendering the April 5, 2007 ruling
void as violative of the due process in the section 2255 context
that § 2255(b) provides for.

POINT TWO: THE APRIL 5, 2007 RULING IS VOID UNDER RULE 60(b)(4)
BASED ON THE DUE PROCESS VIOLATION ARISING FROM THE
FAILURE OF THE COURT TO SPECIFICALLY IDENTIFY IN
THAT RULING, AND ENTER A COROLLARY NEW CRIMINAL
JUDGMENT/STATEMENT OF REASONS REFLECTING, THE PRECISE
DRUG QUANTITY LAURIA IS BEING HELD ACCOUNTABLE FOR

## A. Legal Standard

The legal standard that governs this point is the same as
already set forth supra at 10.

## B. Discussion

As already discussed, the Court held in its December 13,
2006 ruling that its findings under the preponderance standard in
1998 invoking the 21 U.S.C. § 841(b)(1)(A) penalty provision, in
the absence of any allegation in the indictment or finding by the
jury to support those findings, limited Lauria's sentence to the
21 U.S.C. § 841(b)(1)(C) maximum. When it decided in the April
5, 2007 ruling to leave Lauria's 35 year sentence intact under
the rubric of § 841(b)(1)(B), the Court based that decision on
the government's argument that it should change the basis of
Lauria's sentence to 3.5 kilograms of cocaine per the argument
Lauria's counsel raised at sentencing in 1998 to that effect.  In
fact, that was the precise and sole basis for the Court's finding
that there was "overwhelming" and "essentially uncontroverted"
evidence to justify a sentence under the more than 500 grams but
less than 5 kilograms § 841(b)(1)(B) provision.  (Doc. 423, at
9).

At no point in the April 5, 2007 ruling did the Court
suggest that its holding in the December 13, 2006 ruling that its
1998 findings violated Apprendi and warranted the re-sentencing
it found necessary, was in any way incorrect.  (Compare, Doc.

411, at 35-39; with Doc. 423, at 1-13).  The sole basis the resentencing found necessary based on the 1998 findings was not conducted was because of the Court's new drug quantity finding of 3.5 kilograms of cocaine that it made in its April 5, 2007 ruling.  (Doc. 423, at 9).

Nevertheless, the Court never entered a new criminal judgment and statement of reasons per 18 U.S.C. § 3553(c) corresponding to its new sentence findings it made in the April 5, 2007 ruling.  That lapse has now prejudiced Lauria since the lack of a new criminal judgment and statement of reasons corresponding to the April 5, 2007 drug quantity findings has had a double-negative impact and created a legal limbo/catch-22 situation by: (1) enabling the government to evade the re-sentencing found warranted in the December 13, 2006 ruling that was based on the 1998 findings by invoking the new drug quantity findings made in the April 5, 2007 ruling; and (2) the government's more recent reliance on the 1998 findings found violative of Apprendi in the December 13, 2006 ruling (which holding was not departed from or questioned in the April 5, 2007 ruling) to convince this Court to deny the sentence reduction Lauria sought in his 18 U.S.C. § 3582(c)(2) motion that was predicated on the drug quantity found in the April 5, 2007 ruling.

Due process absolutely does not permit the government to have it both ways and confine Lauria to a legal paradox and limbo where his sentence based on the 1998 findings was found (without

dispute as to the 1998 findings) violative of constitutional requirements but then left intact on another basis, but when that other basis provides an opportunity for relief, the undisputed unconstitutional findings are relied on to deny the relief available per the later findings relied on to justify not correcting the undisputed unconstitutional basis for his sentence.  There is absolutely no legal support for a plausible argument and finding that due process is not violated in this highly unusual scenario.

The government cannot evade the resentencing found necessary in the December 13, 2006 ruling based on the 1998 findings by persuading the Court to find the operative drug quantity is 3.5 kilograms (Doc. 423, at 9), but then when that quantity opens the door to a sentence reduction, revert back to the 1998 drug quantity findings that the government has never disputed give rise to a violation of Apprendi.

In a drug case such as this one, it is very well settled that Lauria is entitled to specific findings as to the quantity of drugs he is being held accountable for.  See, United States v. Maturo, 982 F.2d 57, 62 (2d Cir. 1992)(remanding case for additional sentencing proceedings where district court failed to make "specific affirmative factual findings" regarding the amount of narcotics involved).

Thus, because this Court has adopted the government's flip-flopping position in response to Lauria's motion for a sentence reduction, that the 1998 findings are the operative findings

Lauria is being held accountable for, (Doc. 588 and Doc. 589),
there is now a fully ripe due process error arising from the
manner in which the Court made the new drug quantity findings in
the April 5, 2007 ruling to deny the re-sentencing found required
based on the 1998 findings since the April 5, 2007 ruling was not
followed up with an amended criminal judgment or other
transcription within the meaning of section 3553(c) to enable
Lauria, the public, this Court, and the Court of Appeals, to have
a clear understanding as to the precise drug quantity Lauria is
being held accountable for.

Indeed, in noting the "concrete purposes for requiring
sentencing courts to make 'statements of reasons' under rule
3553(c)[,]" the Second Circuit said that "[b]y informing the
defendant of the basis for the sentence, he or she may well
become better able effectively to pursue an appeal asserting that
the sentence is unreasonable." United States v. Lewis, 424 F.3d
239, 247 (2d Cir. 2005).

That court also said informing the "Court of Appeals as to
the reasons for the sentence," is imperative as it "may well
become better able to hear and determine the appeal effectively."
Id. The Second Circuit has described the need to accurately
inform defendants of the basis for their sentence as "clearly"
being "substantial." Id.

Due process is indisputably now fully implicated with regard
to the manner in which new findings were made in the April 5,
2007 ruling without a proper judgment/statement of reasons within

the meaning of section 3553(c) being entered since such has in fact actually deprived Lauria of obtaining any benefit arising from the 3.5 kilograms of cocaine finding in the April 5, 2007 ruling, such as the U.S.S.G. Amendment 782 reduction he sought.

Because the government has recently prevailed in its position that the 1998 findings are the operative findings in this case, (Doc. 588 and Doc. 589), even though it successfully argued otherwise during Lauria's section 2255 litigation resulting in the April 5, 2007 ruling, this Court has a duty to fairly apply the law and redress this obvious due process violation by voiding the April 5, 2007 ruling and reinstating that part of the December 13, 2006 ruling granting Lauria a full resentencing where his maximum sentence as to Count One must be limited to 30 years.  Obviously Lauria must also be permitted at any new sentencing hearing to be heard as to why he should be sentenced to far less than that 30 year maximum and be sentenced to a term that should result in his 21 plus years of imprisonment being found more than sufficient punishment and result in his immediate release.

Indeed, well settled precedent supports the necessity for reinstatement of the December 13, 2006 ruling as to resentencing based on the 1998 findings since: (1) there is no statement of reasons or transcription of Lauria's sentence within the meaning of section 3553(c) other than the 1998 record; (2) the government has never disputed during the section 2255 litigation that the 1998 findings violate Apprendi and thus warrant a resentencing;

(3) the government has recently unequivocally argued for and obtained a ruling by this Court (Doc. 588 and Doc. 589) that the 1998 drug quantity findings are the operative findings, not the April 5, 2007 findings it successfully argued for after the December 13, 2006 ruling; and (4) no new judgment and statement of reasons corresponding to the April 5, 2007 drug quantity finding has ever been issued.  The holdings in Lewis and Maturo, supra, support the need for redress in this regard.

Moreover, because the April 5, 2007 drug quantity findings are in square conflict with the 1998 record that the government has most recently persuaded this Court to find is the operative record and drug quantity findings (which findings the government has never contested violate Apprendi and give rise to the need for the relief granted in the December 13, 2006 ruling), the oral sentence findings on the record in 1998 must be deemed the operative record thus voiding on due process grounds the April 5, 2007 ruling.  See, United States v. A-Abras Inc., 185 F.3d 26, 29 (2d Cir. 1999)("Where an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control.").  Here, the conflicting written judgment would be the April 5, 2007 ruling.

In other words, the oral pronouncement of sentence in 1998 is what the government has most recently relied on as the operative findings in this case (Doc. 588 and Doc. 589) and this Court is now bound (by its duty to fairly apply the law) to honor

that argument and its own findings adopting that argument, and

void the April 5, 2007 ruling and reinstate the resentencing

granted in the December 13, 2006 ruling based on the very same

1998 findings this Court found are the operative findings in this

case.  Again, the government has never disputed at any point that

the 1998 findings violate Apprendi.

POINT THREE: RELIEF FROM THE APRIL 5, 2007 RULING IS ALSO
            PROPER UNDER THE RUBRIC OF RULE 60(b)(6) PER THE
            RECENT HOLDING IN BUCK V. DAVIS

To avoid redundancy Lauria adopts all set forth supra for

purposes of this point that relief is also appropriate under Rule

60(b)(6) per the Supreme Court's recent decision in Buck v.

Davis, 580 U.S. ___, 137 S.Ct. 759 (Feb. 22, 2017).

In Buck the Supreme Court made it clear that courts

considering whether Rule 60(b)(6) relief is appropriate should

basically cut the legal "red tape" when justice requires such.

In conveying that message our highest court re-emphasized that

"the whole purpose of Rule 60(b) is to make an exception to

finality."  Buck, 137 S.Ct., at 779 (internal quotation marks and

citation omitted).

It is clear to any fair-minded person reading all of the

information set forth relative to how things have transpired as

to the manner in which the April 5, 2007 ruling was made and how

the government has retreated from it when the findings in that

ruling did not suit its effort to deprive Lauria of any chance at

reducing his sentence regardless of whether justice dictates that

relief in some way be afforded to Lauria, that there are valid

issues that deserve the Court's attention, and warrant the redress Lauria seeks in this motion.

For all the reasons discussed supra, Buck v. Davis supports Lauria in his quest for the fairness and justice all are entitled to in an American Court.  This Court should vacate the April 5, 2007 ruling and reinstate that part of the December 13, 2006 ruling granting Lauria a resentencing.

POINT FOUR: THE COA GRANTED IN THE APRIL 5, 2007 RULING SHOULD BE CONTINUED AT THIS POINT IF THIS MOTION IS DENIED SINCE IT WAS ALWAYS JUDGE DORSEY'S INTENT THAT HIS CHANGE IN POSITION AS TO RESENTENCING BE REVIEWED AND THE ISSUES RAISED IN THIS MOTION AS TO THAT VERY MATTER ARE AT A BARE MINIMUM "DEBATABLE"

Judge Dorsey's inexplicable change in position as to the re-sentencing he found appropriate in his December 13, 2006 ruling, alone, demonstrates the debatable nature on the matter of whether Lauria is entitled to a resentencing.

Indeed, Judge Dorsey explicitly found that the issue was in fact "debatable among jurists of reason," and he granted a COA so Lauria could appeal the issue.  (Doc. 423, at 12).  Nevertheless, and even though the government never contested the propriety of jurisdiction on the sentence issue, the Second Circuit found it lacked jurisdiction over that part of the appeal.

So, although there has been a finding of the nature required to appeal, for some very strange reason the Second Circuit did not want to exercise jurisdiction over the part of the appeal relative to the sentence issue.  Thus, the original COA should be deemed sufficient to enable an appeal relative to the April 5, 2007 ruling at this point since it was Judge Dorsey's explicit

intent that his ruling be appealed, and he made the requisite
finding that his ruling was in fact "debatable among jurists of
reason." (Doc. 423, at 12).

Even if that was not so, the issues raised herein are more
than fairly debatable in light of the specific factual scenario
in issue and how the well-settled precedent on all points are
fully supportive of Lauria's positions, thus satisfying the COA
standard in the Rule 60(b) context recently clarified by the
Supreme Court in Buck v. Davis.

There, our highest court instructs that the "COA inquiry ...
is not coextensive with a merits analysis.  At the COA stage, the
only question is whether the applicant has shown that jurists of
reason could disagree with the district court's resolution of his
constitutional claims or that jurists of reason could disagree
with the district court's resolution of his constitutional claims
or that jurists could conclude the issues presented are adequate
to deserve encouragement to proceed further."  137 S.Ct., at 773
(internal quotation marks and citation omitted).

Clearly, the issues raised herein, at a very bare minimum,
more than amply satisfy that standard for the issuance of a COA
if this Court denies relief on the merits.

### V. CONCLUSION

Fair consideration of these issues is what Lauria seeks.  If
fairness and justice have any relevance in this Court than those
ideals support the conclusion that Lauria is entitled to the
primary relief sought herein, which is the voiding of the April

5, 2007 ruling and the reinstatement of that part of the December 13, 2006 ruling granting Lauria a resentencing.

Respectfully submitted,

*Gordon Lauria*

Gordon Lauria, pro se
Reg. No. 10210-014
FCI Danbury
33½ Pembroke Rd.
Danbury, CT 06811

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing was served on this 20 day of March, 2018, via prepaid U.S. First Class Mail, upon:

Peter Markle, AUSA
U.S. Attorney's Office
157 Church Street, 23rd Fl.
New Haven, CT 06510

By: *Gordon Lauria*

       Gordon Lauria